UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARLON KENNEDY                                    CIVIL ACTION

VERSUS                                            NO. 06-5274

SHERIFF MARLIN GUSMAN, ET AL.                     SECTION: "B"(1)

ORDER AND REASONS

Plaintiff, Marlon Kennedy, filed this *pro se* and *in forma pauperis* complaint against Sheriff Marlin Gusman, Trishawn Cole, Amanda Baptiste, and Bonita Pittman regarding plaintiff's confinement within the Orleans Parish Prison system. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.[1]

On March 19, 2007, the Court dismissed plaintiff's claims regarding the conditions of his confinement in the immediate aftermath of Hurricane Katrina. Defendants have now filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56 regarding plaintiff's remaining claims.[2] Plaintiff has opposed that motion.[3]

---

[1] Rec. Doc. 16.

[2] Rec. Doc. 29.

[3] Rec. Doc. 35.

In reviewing a motion for summary judgment, the Court may grant judgment when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In this lawsuit, plaintiff is asserting the following claims:

1. Plaintiff was confined in an overcrowded cell.

2. Plaintiff was denied a mattress for one night.

3. The cell had only one operable toilet and sink.

4. There was no hot water.

5. Plaintiff was not provided with cleaning supplies.

6. Plaintiff was not provided with toiletries.

7. Plaintiff had to use a blanket already used by other inmates.

      8.      Incoming inmates were not tested for infectious diseases.

      9.      Plaintiff received inadequate medical care.

     10.     Plaintiff did not receive satisfactory responses to his grievances.

     11.     Plaintiff was exposed to secondhand smoke.

Conditions of Confinement Claims

Several of plaintiff's claims challenge the conditions of his confinement within the Orleans Parish Prison system. Specifically, he alleges that he was confined in an overcrowded cell with only one operable toilet and sink and no hot water. He further alleges that he was not provided with adequate cleaning supplies and toiletries and that he had to use a blanket already used by other inmates. Plaintiff claims that he was subjected to these conditions both as a pretrial detainee and as a convicted inmate.

When a pretrial detainee challenges the conditions of his confinement, his claims are analyzed under the Fourteenth Amendment. With respect to such claims, the United States Fifth Circuit Court of Appeals has held:

> In <u>Bell v. Wolfish</u>, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Supreme Court evaluated the constitutionality of conditions of confinement of pretrial detainees. Because they have not yet been convicted of the crime with which they have been charged, pretrial detainees have a due process right not to be punished for that crime. The Supreme Court has stated that the distinction between conditions that may be imposed on convicted prisoners and conditions that may be imposed on pretrial detainees as follows:
>
>> [T]he State does not acquire power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.

> Ingraham v. Wright, 430 U.S. 651, 671-72 n. 40, 97 S.Ct. 1401, 1412-14 n. 40, 51 L.Ed.2d 711 (1977). Courts deciding the constitutionality of conditions of confinement of pretrial detainees must determine whether the conditions complained of are imposed for the purpose of punishment. Bell, 441 U.S. at 538, 99 S.Ct. at 1873. Courts may find a punitive purpose upon direct proof of an expressed intent by detention facility officers to punish the pretrial detainee for a crime with which the detainee has been charged but not yet convicted. Id. at 538, 99 S.Ct. at 1873-74. In addition, courts may infer a punitive purpose if the challenged condition or restriction is not reasonably related to a legitimate governmental objective. Id. at 539, 99 S.Ct. at 1874.

Hamilton v. Lyons, 74 F.3d 99, 104 (5th Cir. 1996) (footnotes omitted).

On the other hand, when a convicted inmate challenges the conditions of his confinement, his claims are analyzed under the Eighth Amendment. With respect to such claims, the United States Fifth Circuit Court of Appeals has held:

> The Eighth Amendment dictates that cruel and unusual punishment shall not be inflicted, and it is applicable to the States by reason of the Due Process Clause of the Fourteenth Amendment. The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.
> 	The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. Prison officials must provide humane conditions of confinement; they must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measure to ensure the safety of the inmates. This circuit has worded the test as requiring extreme deprivation of any "minimal civilized measure of life's necessities." ... The Supreme Court has made clear that the standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society" and not the standards in effect during the time of the drafting of the Eighth Amendment.
> 	A prison official has violated the Eighth Amendment when he 1) shows a subjective deliberate indifference to 2) conditions posing a substantial risk of serious harm to the inmate. Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

>Conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets. The Supreme Court has noted that "the length of confinement cannot be ignored.... A filthy, overcrowded cell ... might be tolerable for a few days and intolerably cruel for weeks or months." It is also important to note that the inmate need not show that death or serious illness has occurred.

Gates v. Cook, 376 F.3d 323, 332-33 (5th Cir. 2004) (citations omitted).

Some of the conditions about which plaintiff complains, while undeniably unpleasant, clearly are not so egregious as to be unconstitutional. For example, the United States Constitution does not specify the minimum number of toilets required in a prison cell. One federal court has noted that while the American Correctional Association recommends one toilet per twelve inmates, those standards "do not establish constitutional minima." Patchette v. Nix, 952 F.2d 158, 163 (8th Cir. 1991) (finding that one toilet for twenty-four inmates was not unconstitutional). Therefore, even if the Court accepts as true plaintiff's contention that at times there were between thirteen and seventeen prisoners in a cell with only one toilet and sink, that contention fails to state a constitutional violation. Likewise, even if plaintiff's allegations are true regarding the lack of hot water for showers, there appears to be no support for a proposition that prisoners have a constitutional right to hot showers. Lopez v. Robinson, 914 F.2d 486, 492 (4th Cir. 1990).[4] Lastly, to the extent that plaintiff is complaining that incoming inmates were not routinely tested for

---

[4] Moreover, the United States Fifth Circuit Court of Appeals has noted that a prisoner may not recover on claim alleging that he was forced to take cold showers where no physical injury resulted. Herman v. Holiday, 238 F.3d 660, 666 (5th Cir. 2001); 42 U.S.C. § 1997e(e).

infectious diseases, no such screening of all inmates is constitutionally required. See Gibbs v. Grimmette, 254 F.3d 545, 550 (5th Cir. 2001).

Other conditions about which plaintiff complains might, in some circumstances, rise to the level of constitutional deprivations, but not in this case. For example, plaintiff complains about the lack of toiletries, such as soap, tissue, toothbrushes, and toothpaste. However, the Constitution does not require that free hygiene supplies be provided to non-indigent inmates. See Roach v. Klingman, 412 F.Supp. 521, 526-27 (E.D. Pa. 1976). Plaintiff has not alleged either that such items were unavailable for purchase through the commissary or that he had insufficient funds to make such purchases.[5] Likewise, having to sleep on the cell floor without a mattress may in some instances amount to a constitutional violation. However, where, as here, the deprivation is temporary[6] and there is no indication that the denial was punitive in nature, the Constitution simply is not violated. See Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1995) (unintended circumstance where detainee was forced to sleep on the floor for a single night did not amount to a constitutional violation).

Finally, whether the other conditions about which plaintiff complains rise to the level of constitutional violations simply cannot be determined from the evidence currently before the Court. For example, plaintiff alleges that he was forced to use a blanket that had been used by others. The Court would have no hesitancy in finding that, absent an injury, a claim regarding a dirty blanket

---

[5] To the contrary, plaintiff's pauper application indicates that he received $25 - $100 per month from family members. Rec. Doc. 2, p. 1.

[6] Plaintiff states in his complaint: "I waited a whole day before I got a mattress." Rec. Doc. 1, p. 12. See also Rec. Doc. 35, p. 5 ("I had to sleep on the floor w/ no mattress for the first night.").

generally is not cognizable. See, e.g., LeShore v. Allen County Jail, No. 1:06-CV-259, 2006 WL 2095237 (N.D. Ind. July 25, 2006); Franklin v. Sheahan, No. 97 C 6534, 1998 WL 312120, at *5 (N.D. Ill. June 5, 1998). Here, however, plaintiff alleges that due to the unsanitary conditions, presumably including the blanket, he contracted a staph infection. In light of that allegation, as well as the fact that the need for and condition of the blanket are at this point unclear, the Court cannot say that defendants are entitled to judgment as a matter of law with respect to this claim.[7] Similarly, the mere fact that the cell was overcrowded does not in and of itself amount to a constitutional deprivation. See, e.g., Castillo v. Cameron County, Texas, 238 F.3d 339, 354 (5th Cir. 2001) ("[A]lthough overcrowding may give rise to unconstitutional conditions, overcrowding itself is not per se unconstitutional."). However, where, as here, it is alleged that the overcrowded conditions led to the spread of disease, such a claim is cognizable. See Gillespie v. Crawford, 833 F.2d 47, 50 (5th Cir. 1987). Lastly, as to plaintiff's claim regarding the denial of cleaning supplies, the Court finds that without more information regarding the condition of the cell, and in light of plaintiff's allegation of an actual injury, i.e. the staph infection, that claim should also be allowed to proceed. See Newton v. McCullough, 22 Fed. App'x 794 (9th Cir. 2001); McBride v. Deer, 240 F.3d 1287, 1291-92 (10th Cir. 2001); Divers v. Department of Corrections, 921 F.2d 191, 194 (8th Cir. 1990); Johnson v. Pelker, 891 F.2d 136, 139-40 (7th Cir. 1989); Hoptowit v. Spellman, 753 F.2d 779, 784 (9th Cir. 1985); Wilson v. Schomig, 863 F.Supp. 789 , 795 (N.D. Ill. 1994).

---

[7] It is unclear, however, whether plaintiff exhausted his administrative remedies with respect to that claim. Although plaintiff attached to his complaint a grievance regarding many of the conditions at issue, the dirty blanket is not mentioned in that grievance. If plaintiff failed to submit a grievance regarding the blanket, the defendants may raise the exhaustion issue at trial.

Inadequate Medical Care

Plaintiff claims that he was not given his tuberculosis medication as prescribed and was denied proper medical care for a dental problem and a staph infection. It is clear that the constitutional rights of an incarcerated person, whether he is a pretrial detainee or a convicted prisoner, may be violated if his serious medical needs are met with deliberate indifference on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001) (pretrial detainee); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999) (convicted prisoner). However, the United States Fifth Circuit Court of Appeals has held:

> Deliberate indifference is an extremely high standard to meet. ... [T]he plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks and citations omitted).

Defendants contend that plaintiff's medical care was constitutionally adequate. In support of that contention, they have supplied copies of plaintiff's computerized medical records from the Orleans Parish Prison system.[8]

With respect to plaintiff's allegations concerning the tuberculosis medication, defendant notes that, while plaintiff was in the Bossier Parish Correctional Facility, he was placed on a six-month treatment plan for exposure to the disease. At the time he returned to the Orleans Parish

---

[8] Rec. Doc. 29, Exhibit A.

Prison system in April 2006, only two weeks remained of that six-month course of treatment. The medical records reflect that plaintiff did in fact receive his remaining two weeks of medication, at which time the course of treatment was complete. Accordingly, the Court finds that the allegations regarding the administration of tuberculosis medication to be without merit.[9]

However, the Court finds that summary judgment is not appropriate with respect to plaintiff's medical claims concerning his dental problem and staph infection.

Regarding the dental problem, plaintiff alleges that he needed to have a tooth extracted and, in fact, the prison's Medical Intake Screening form indicates that he was complaining of a toothache when he entered the facility. Although it appears from the record that the tooth was extracted on April 19, 2006, approximately two weeks after he entered the facility, he complains that he was given no pain medication during that two-week period. Regarding the purported staph infection, the medical records reflect that the nurse examined plaintiff on April 18, 2006, and found red bumps on his thigh and leg; however, it appears no treatment was given to plaintiff for that condition.[10] The medical records indicate that the nurse noted that a follow-up should be done by the jail doctor "to eval wounds"; however, it is unclear whether that entry related to the dental problem or the

---

[9] The Court notes that the records reflect that plaintiff complained that he did not receive his medication on April 14, 2006. To the extent that plaintiff is perhaps claiming that he missed a dose of his medication during that two week period, such a claim has no merit. Occasional missed doses of medication do not rise to the level of a constitutional violation. See Williams v. Cearlock, 993 F. Supp. 1192, 1196 (C.D. Ill. 1998); see also West v. Millen, 79 Fed. App'x 190, 194 (7th Cir. 2003); Oden v. Conklin, No. 94-2504, 1995 WL 632467, at *1 (7th Cir. Oct. 25, 1995); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); Boutte v. Bowers, No. 3:01-CV-1084-G, 2001 WL 1041761, at *3 (N.D. Tex. Aug. 30, 2001).

[10] It is unclear whether plaintiff in fact suffered from a staph infection. However, in that the medical records show that he was suffering some symptoms which went undiagnosed, whether he in fact suffered from such an infection is, at a minimum, still in dispute.

9

infection. In any event, it appears undisputed that no follow-up was performed with respect to the infection. Defendants contend that plaintiff was instructed to submit a sick call if his infection worsened;[11] plaintiff disputes that contention.[12]

The Court finds that, in some instances, the Constitution may be violated when an inmate is subjected to needless pain while awaiting a dental procedure. See, e.g., Fields v. Gander, 734 F.2d 1313, 1315 (8th Cir. 1984); see also Board v. Farnham, 394 F.3d 469, 480 (7th Cir. 2005); Boyd v. Knox, 47 F.3d 966 (8th Cir. 1995). Further, the Court has no hesitation in concluding that, in some instances, failure to treat a prisoner's staph infection may violate the Constitution. Whether this case presents such an instance with respect to either of plaintiff's claims is, at this point, unclear. Nevertheless, genuine issues of material fact clearly exist as to these claims and, accordingly, summary judgment is not appropriate. Plaintiff will be afforded the opportunity to attempt to prove these claims at trial.

## Grievances

To the extent that plaintiff is claiming that jail officials failed to properly process and respond to his administrative grievances, such a claim simply is not cognizable. An inmate has no constitutional right to an effective grievance process. In Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005), a prisoner alleged that prison officials failed to properly investigate his grievances and letters complaining about perceived civil rights violations. The United States Fifth Circuit Court of Appeals held that the claim was frivolous because a prisoner has no federally protected liberty

---

[11] Rec. Doc. 29, supporting memorandum, pp. 6-7.

[12] Rec. Doc. 35, p. 4.

interest in having his grievances investigated and resolved to his satisfaction.  Id. at 373-74; see also Propes v. Mays, 169 Fed. App'x 183, 184-85 (5th Cir. 2006).

### Exposure to Environmental Tobacco Smoke

Lastly, plaintiff states in his complaint:  "I'm also a non-smoker who was forced to be subject to second hand smoke."[13]  To the extent that statement should be construed as a claim for exposure to environmental tobacco smoke, plaintiff is not entitled to relief.

It is clear that prisoners have a constitutional right not to be involuntarily exposed to "unreasonably high levels" of environmental tobacco smoke.  Helling v. McKinney, 509 U.S. 25 (1993).  Even when a prisoner has not yet suffered any harm from such exposure, he may be granted *injunctive* relief if he can show that such exposure poses an unreasonable risk of serious damage to his future health.  Id.  In the instant case, however, plaintiff's claim fails for several reasons.

First, although plaintiff has alleged exposure to smoke, the Constitution does not protect against all such exposure.  Rather, only involuntary exposure to "unreasonably high levels" of environmental tobacco smoke is unconstitutional.  Because plaintiff has made no allegation that his exposure rose to that level, he has failed to state a constitutional claim.  Harris v. Ashby, No. 01-11110, 2002 WL 1899583, at *2 (5th Cir. July 8, 2002); see also Harrison v. Smith, 83 Fed. App'x 630, 631 (5th Cir. 2003).

Second, plaintiff has been transferred from the Orleans Parish Prison system.  Therefore, any request for injunctive relief with respect to this claim would be moot.  Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001).

---

[13]  Rec. Doc. 1, p. 14.

Third, as to any claim for monetary damages, such a claim would be barred because plaintiff has not suffered a physical injury as a result of the exposure.  42 U.S.C. § 1997e(e); Herman, 238 F.3d at 665-66.  Moreover, even if plaintiff were seeking damages for an increased risk of developing a tobacco-related injury in the *future* as a result of his exposure, his claim is still barred by § 1997e(e).  See Herman, 238 F.3d at 666.

Accordingly,

**IT IS ORDERED** that defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

**IT IS ORDERED** that the motion is **GRANTED** with respect to the following claims:  (1) plaintiff was denied a mattress for one night, (2) plaintiff's cell had only one operable toilet and sink; (3) there was no hot water; (4) plaintiff was not provided with toiletries; (5) incoming inmates were not tested for infectious diseases; (6) plaintiff was not given his tuberculosis medication; (7) plaintiff did not receive satisfactory responses to his grievances; and (8) plaintiff was exposed to secondhand smoke.  **IT IS ORDERED** that those claims are **DISMISSED WITH PREJUDICE**.

**IT IS ORDERED** that the motion is **DENIED** with respect to the following claims:  (1) plaintiff was confined in an overcrowded cell; (2) plaintiff was not provided with cleaning supplies; (3) plaintiff had to use a blanket already used by other inmates; and (4) plaintiff received inadequate medical care for a dental problem and a staph infection.  Those claims will proceed to trial.

New Orleans, Louisiana, this second day of May, 2007.



                    **SALLY SHUSHAN**
                    **UNITED STATES MAGISTRATE JUDGE**